I see Mr. Paul and I see Mr. Bont, all right, you may proceed Mr. Bont. Thank you your honor, may it please the court, my name is John Bont, I represent the appellant plaintiff, Beth Sweet, and I've reserved two minutes for rebuttal. The district court incorrectly granted summary judgment for Longstreet on the causation element of Sweet's First Amendment retaliation claim. This is a case about an employee who was fired for protesting an elected official's favoritism of rich people over poor people in the performance of his official duties. This court has previously instructed litigants that circumstantial evidence of causation in a First Amendment retaliation case may include suspicious timing, ambiguous statements, behavior or comments directed at other employees in the protected group, and evidence that the employer offered a pretextual reason for an adverse employment action. In this case, Sweet has designated evidence that touches upon each one of these four examples. Starting with the fourth example and working my way backward, in this case Longstreet shifted or piled on to his reasons for terminating Sweet's employment at least three times and Sweet designated evidence to call every one of these reasons into question. On the day Sweet was fired, Longstreet told her that there was less work for her to do and a mismatch between her skill set and the job's requirements. But this has been contradicted by Sweet's former direct supervisor's testimony that following Sweet's termination there was more work for everyone else to do, as well as Longstreet's own testimony wherein he admitted that Sweet handled more phone calls than any of the other CSRs and that he wanted them to do it like her because she knows how to control the situation and get done what needs to be done. Then following Sweet's termination, Longstreet's chief deputy proffered to the Indiana Department of Workforce Development that Sweet was fired because of a fee collection error where she cost the town over $1,000. But there is no evidence that anyone ever confronted Sweet about this alleged error prior to her firing, let alone any evidence that Sweet was responsible for it. In fact, Longstreet testified to the contrary that he wasn't sure if she was the one who caused the error. Finally, when moving for summary judgment in the district court, Longstreet affirmed that Sweet was also fired because she bullied a co-worker. However, there is no documented evidence that this ever happened. It was never mentioned to Sweet prior to her firing. And not only Sweet, but her former co-worker affirmed under oath that it simply did not happen. Mr. Bond, I understand why you'd begin with the causation argument, but I'd like you to spend some time on the first element, whether Sweet's statements were made in her capacity as a private citizen and whether or not they were protected by the First Amendment. Certainly, Your Honor. And I think for that, we looked at the Supreme Court's decision in 2014 in Wayne v. Franks. And there, the Supreme Court clarified that the critical question in these sorts of cases is whether the speech at issue itself ordinarily within the scope of an employee's duties, not merely where it just concerns those duties. And in this case, if you look at Sweet's speech, running one's boss, particularly an elected official, when you are a low-level employee, is never pursuant to one's official duties. What she was doing was outside of her official duties. She was calling into question what she saw as corruption, as preferential treatment of rich people over poor people. So for that reason, I believe it meets the first element of the Lane test. Well, there isn't a whistleblower exception to the official duties rule, correct? It sounds to me like you're making a whistleblower-type argument. I could understand why Your Honor views it that way. There isn't a whistleblower exception. I think the focus needs to be on the context of the employee's speech and whether or not it was speech that she would ordinarily make in the context of her official duties. In this case, if Ms. Sweet had made the statement at issue not to Mr. Longstreet but to a customer and if it had been part of her ordinary duties of collecting rent or talking to customers over the phone, then we wouldn't be here today, Your Honor. But we're here specifically because she did what low-level employees are less likely to do, which is to call a public official out on what she viewed as unfair treatment, as preferential treatment of rich people over poor people, and the performance of his official duties. So I wouldn't say that it's a whistleblower exception. I would just say that it's not within her official duties, which is what the Supreme Court indicated that we should be looking at, Your Honor. Shifting back to causation, if I might, I think another fact that has been called into question on summary judgment is that Longstreet at that stage said that Sweet was fired because she bullied a coworker. But again, there's no documented evidence that that ever happened. It was never mentioned to her prior to her termination, and Sweet and a former co-employee affirmed that it didn't happen. When we look at behavior directed at other employees in the protected group, Jennifer Ernest firing is a strikingly similar situation to that of Ms. Sweet's, where Ms. Ernest called into question why the clerk-treasurer was treating a landowner developer different than a homeowner in that context. Ordinarily, landowner developers are billed for utility fees before the homeowner takes possession, and in that case, for whatever reason, the homeowner was billed for those fees, and Ms. Ernest said that shouldn't be. That's not how the rules are applied in the town of Argersville, and she was terminated shortly thereafter. Mr. Bond, is there any evidence that Mr. Longstreet, who's the one who terminated Ms. Sweet, had any role in Ms. Ernest being terminated? Actually, the district court found, Your Honor, that Longstreet was the sole official in that office responsible for hiring and firing decisions, and in fact, Ms. Ernest made her statement to Longstreet's chief deputy, Nancy Kell, so I think we can infer from the closeness of their relationship that that is sufficient evidence that Longstreet made the decision to terminate Ms. Ashbaugh Ernest's employment, Your Honor. As to timing, this is certainly not a case where a plaintiff could or should rely on timing alone to meet her summary judgment burden on causation, but it can't be discounted that one of Sweet's job duties, in fact, her main job duty, disconnecting untimely utility payers, was removed immediately after she spoke out against Longstreet for his preferential treatment of rich people over poor people. So when you remove someone's key duty, key job duty, the natural implication is that that person is not going to be around very much longer, and in fact, Sweet testified in her deposition that she was around long enough to train her replacement as to how to do her job, and then she was gone. Collectively, these facts raise a genuine issue for trial as to why Sweet was fired. Shifting back to the First Amendment portion, or the First Amendment issue that is salient before the court, Sweet's statement to Longstreet that he should treat utility customers the same regardless of whether they are rich or poor is worthy of First Amendment protection. A public employee going out against her boss's preferential treatment is exactly the sort of citizen speech that we as a society have an interest in protecting, and it's not very that speech if it is broadcast outside the walls of the public office. We need to protect that sort of speech inside the walls of the public office in order to engender trust amongst employees, which is vital to public employment. If there are no other questions, I can reserve the remainder of my time for rebuttal. Thank you, Judge. May it please the court. I think it's important to start with, as we went through in our brief, that what did the plaintiff argue with respect to these things to the district court? Now, the question is, was a causal link established under the motivating factor analysis that Spiegel tells us had it not been for the violation, the injury of which she complains wouldn't occur. Now, it's key to note here that, first, the district court utilized the motivating factor analysis in its decision on summary judgment here, but as a starting point, I think it's important to know what was argued about this question by the plaintiff in this case, and the sum total of these arguments related to the retaliation claim that we're talking about here today are contained in two paragraphs on page 31 of their brief. That's in the district court docket number 44. And in those two paragraphs, Ms. Sweet argued that she, the first portion of her argument was that the adverse employment action was, in fact, her removal from doing disconnects, which was a portion of her job duties, and that because it occurred immediately after the alleged protected speech that the causal link was established. And the second paragraph talks about the Ernst declaration, which the court properly noted in asking Mr. Bond on this question. The Ernst declaration doesn't add anything to this. I'll talk about that in a little bit more detail in a moment. Ernst doesn't even mention Steve Longstreet in her declaration, and the inferences that come from that declaration are fairly disproportionate to what is actually included in that declaration. But the importance of the starting point being, what did the plaintiff argue about all this is, I think we'll all agree that you can't argue a point, you can't make an argument that was not made to the district court on either a motion to alter amendment or on appeal. And that's what plaintiffs, with each adverse decision that's been rendered here, kind of done is altered the argument that's been made related to this motivating factor analysis. And again, when you look at the specific arguments in those two paragraphs on page 31 of her brief, those are the two arguments she makes. She makes the argument that simply, put simply, that the temporal relationship between the adverse, the alleged protected speech and the adverse employment action, which what she's relying upon is her removal from moving disclaims. That's the argument she made, not that it constituted a broader swath of circumstantial evidence that supported the motivating factor analysis. Now, it's important to note also, in the Hobgood case that plaintiff relies upon pretty heavily, the court specifically noted that the case has recognized that you can't infer a plaintiff is a victim of retaliation or discrimination based upon one isolated bit or piece of evidence. And if you look at what the plaintiff argued here, and again, taking out the Ernst declaration, which I think the court properly didn't give a great deal of consideration to, because again, it doesn't add anything to this case. It doesn't even mention Steve Longstreet. It doesn't mention the role that he might have played in her firing. It doesn't mention why she was fired. It doesn't mention there's a laundry list of defects that with the Ernst declaration, if you're trying to utilize it for the purpose of suggesting that it constitutes circumstantial evidence that's pertinent to Ms. Sweet, it just simply does not. But when you look at it and boil it down to this, that really, the plaintiff's only argument was I was removed from doing this right after this allegedly protected speech. So the Hobgood case doesn't allow one piece of evidence to constitute an inference that supports the motivating factor analysis that we have here. So the argument that, the broader argument that this can constitute circumstantial evidence that supports the firing, again, is waived as we, I believe is waived as we described in more detail in our brief. So getting back to the meat of this, the question, Codrea, which is cited in our brief as well informs us that in order to prove retaliation, a plaintiff has to demonstrate that the retaliation was a substantial and motivating factor in the defendant's decision to terminate. That's Codrea v. City of Kokomo. Now, let's say you get past the waiver argument and you can question, well, what does this alleged removal from her job duty have to do with her termination five months later? And the plaintiff doesn't explain in any, at any stage in this, how being removed from this disconnect played any, for this allegedly protected, how being removed from doing disconnects for this allegedly protected speech rationally supports any inference that five months later her firing was related to that in any way. And I think it's important to note the Mathewson case that the plaintiff relies upon fairly heavily in their reply, a 34-year-old case from 1986 is pretty distinguishable factually and procedurally from the case we have here. The Mathewson case in which the plaintiff suggests supports the notion that an adverse employment action, meaning a demotion in the Mathewson case. And in this case, the alleged removal from doing disconnects, but Mathewson was a case that was decided on with the district court granting a J and O V in favor of the defendant after a jury break. Now, most importantly, in that case, the court noted that there was a direct link between the demotion in which it was an issue in that case and the termination, because the court stated that the gentleman's name was Bear, that when Bear terminated plaintiff, he mentioned the negative comments he'd received a year earlier from plaintiff's fellow officers. So in Mathewson, there was a direct link to this question of the demotion and the term, which was not an issue in that case. The court found it properly that the adverse employment action that Mathewson was complaining about was termination. But point being, Mathewson tells us that there was a direct link between those two things. And so that doesn't support the inference of plaintiffs trying to make here. Plaintiffs just trying to make really a post hoc propter hoc argument that says, well, I made these adverbs or I made this allegedly protected speech, and then I was fired sometime later. And the cases that we've cited, Saigon particularly, in our brief, just don't allow for that. Now, it's important to note that the record is, there's substantial evidence that was unrefuted in the record regarding plaintiff's substandard job performance here. So when you look at whether or not, again, this question of did, was there, excuse me, enough circumstantial evidence that the plaintiff designated to support the notion that the district court's grant of summary judgment here was not correct. When you look at what the district court noted, which is that generally speaking, their docket on docket number 52 on pages four and five, the evidence of plaintiff's substandard job performance is replete in the record. And so the removal from doing this disconnects, and again, it is essentially the only argument, is the only evidence that plaintiff really is relying upon to try and establish this enough evidence designated in the record, particularly just to show that the earnest declaration, as we stated before, that really, it provides no relevant evidence to this case whatsoever. Again, it doesn't even mention Steve Longstreet in the earnest declaration. It's just not, it's just not a, it's not something that would have, would have been, the district court properly didn't consider that as a reasonable linkage to whether or not Ms. Sweet's termination was related to, to these alleged comments. Did you call it even protected speech in the first place? That, I don't, that was my, I was getting ready to comment on that next. This, this speech is directly related to her job duties. Now, I think it's important to note that the Lane case or the Jane case that plaintiff mentioned came before the, the, the Jane case that is identified in, in, in our brief. And, and the, the, the, the Jane case that's identified in our, in, I'm sorry, not the the, the Haebner case. The, the question has to be, we, they've repeatedly said that employee speech about misconduct has to still be, if it's within an area of their job duties, the Hatcher case, I apologize, I've got, if it's within their, if it's within, directly related to their job duties, and Hatcher came about after Jane, to be clear. But if it's directly related to their job duties, speech about misconduct is, is not actionable. And again, one of the important things to note here, and my time's about to expire, I apologize, I was going to go a little bit more on the burden shifting question, even I had shifted that she wouldn't have been able to prove that. As a last point, I would note that the, the, the, these things she's complaining about are directly related to her job duties. Who gets disconnected and who doesn't, by her own definitions, are directly related to her job duties. And again, this speech about this misconduct does not qualify as protected speech. So, I see my time has expired and I would gladly answer your questions, but thank you, Judge. Thank you very much. Thank you, Your Honor. I'd like to spend a little bit of time discussing this court's 2016 decision in Christoffick, or it's sometimes referred to as Christoffick 2. That was a case where a part-time police officer first reported official misconduct privately to some fellow officers within the police force. Now, you could make the argument that a police officer's job is always to report misconduct of any sort, whether it be breaking the law or whether it be a violation of a rule. That's what police officers are for. You could make the argument that that was pursuant to his official duties. However, this court looked beyond that sort of obvious argument and really dug into what was going on in that situation and said that this court must be especially careful in concluding that employees have spoken pursuant to their official duties when the speech concerns allegations of public corruption. And that's precisely what we have in this case, Your Honor. This is the sort of case that we want to encourage them to bring because if it were otherwise, one of two things would happen. First of all, they would go immediately to the 6 o'clock news before addressing it directly with their boss, the public official. Or two, this sort of thing is going to continue to happen. Public officials are going to continue to engage in private business on the public's dime, which is not something we as a society have an interest in doing or protecting. So, I think for that reason, I would urge this court to grant Sweet Speech First Amendment protection and move on to the district court's analysis of causation in this case, which, again, by focusing on all of the facts collectively instead of isolating and deconstructing each particular fact, I'm confident that this court, I hope, will agree that she has sufficient evidence of First Amendment retaliation to present her case to a jury. And if there are no further questions, I can relinquish the room. All right. Thank you very much. Our thanks to both counsel. The case is taken under advisement.